# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No. 1:99-cr-10045 |
| v. | ) | & |
| NELSON G. HALLAHAN, | ) | Case No. 1:12-cr-10054 |
| Defendant. | ) | |

## ORDER & OPINION

This matter is before the Court on Defendant Nelson Hallahan's Renewed Emergency Motion for Compassionate Release. (Case No. 99-10045, dkt. 139; Case No. 12-10054, dkt. 65). Defendant subsequently supplemented the Motion. (Case No. 99-10045, dkt. 140; Case No. 12-10054, dkt. 66). The Government has responded (Case No. 99-10045, dkt. 142; Case No. 12-10054, dkt. 68), and Probation previously filed a recommendation at the Court's direction (Case No. 99-10045, dkt. 126; Case No. 12-10054, dkt. 56).[1, 2] This matter is ripe for review. For the following reasons, the Motion is granted.

---

[1] Because Defendant's release plan has not changed since his previous request for compassionate release, Probation did not submit a new recommendation. Probation's position on the release plan has not changed. (*See* Case No. 99-10045, dkt. 140 at 2; Case No. 12-10054, dkt. 66 at 2).

[2] The filings and documentation in these cases are largely duplicative; all further citations are to the documents filed in Case No. 99-10045 unless otherwise specified.

## BACKGROUND

Defendant's criminal history is detailed at length in the Court's previous Order denying compassionate release (dkt. 137), so only a brief summary is necessary here. Between 1977 and 1998, Defendant and his wife (hereinafter "Co-Defendant") were engaged in selling insurance and securities. (Dkt. 84 at 6). In June 1999, they were charged in a 30-count indictment for numerous financial crimes centered on fraud and money laundering (dkt. 117); in January 2000, each pleaded guilty to conspiracy to commit mail and bank fraud and conspiracy to commit money laundering. (Minute Entry Dated 1/6/2000).

Within days of pleading guilty, they disappeared, failing to attend their scheduled sentencing. (Dkt. 84 at 27). Twelve years later, Defendant and Co-Defendant were featured on "America's Most Wanted" and were subsequently discovered living under assumed names in Arizona. (Dkt. 84 at 27). Defendant and Co-Defendant were arrested and charged with failure to appear, and Defendant pleaded guilty. (Case No. 12-10054, Dkt. 1; Case No. 12-10054, Minute Entry Dated 10/31/2012). In November 2012, Defendant was sentenced to concurrent sentences of 60 months and 210 months on the conspiracy to commit fraud and conspiracy to commit money laundering counts, to be followed by a consecutive 60-month sentence on the failure to appear charge. (Dkt. 109 at 115–116). He was also held responsible for $1,446,114.54 in restitution, jointly and severally with Co-Defendant, and received concurrent three-year terms of supervised release. (Dkt. 109 at 116). The

sentence was affirmed on appeal. *United States v. Hallahan*, 756 F.3d, 962 (7th Cir. 2014).

Defendant is now 73 years old and suffering from chronic medical conditions including Parkinson's disease, diabetes, hypertension, and end-stage renal disease. (Dkt. 139 at 3). In May 2020, Defendant filed a Motion for Compassionate Release based on his medical condition and the COVID-19 pandemic. (Dkt. 120). After an evidentiary hearing, the Court denied compassionate release on July 21, 2020. (Dkt. 137).

On December 23, 2020, Defendant filed a Renewed Emergency Motion for Compassionate Release, citing a rapid deterioration of his health. (Dkt. 139 at 1). The Government concedes Defendant's medical condition has changed significantly and no longer opposes his release. (Dkt. 142 at 3). Defendant is currently confined at U.S. Medical Center (USMCFP) in Springfield, Missouri. (Dkt. 142 at 1). If released, he will reside with his sister in Albuquerque, New Mexico, a placement Probation finds suitable. (Dkt. 140 at 2; Dkt. 126 at 3).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). Some courts have held this requirement may be waived, *e.g., United States v. Coles*, 455 F. Supp. 3d 419, 424–425 (E.D. Mich. 2020), while others have held it may not, *e.g., United States v. Albertson*, No. 116-CR-00250, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020). The undersigned has yet to decide that question.

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, § 3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons warrant" compassionate release, § 3582(c)(1)(A)(i). The policy statement issued by the United States Sentencing Commission, U.S.S.G. § 1B1.13, though not currently binding on district judges, provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180.

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

In its July 2020 Order denying compassionate release, this Court found Defendant had exhausted his administrative remedies and accepted the position that

4

Defendant could demonstrate "extraordinary and compelling reasons" for release. (Dkt. 137 at 7). Turning to consideration of the applicable § 3553(a) factors, the Court concluded, "In light of Defendant's pervasive disrespect for the law unless it benefits him and BOP's demonstrated ability to provide the necessary medical and non-medical assistance to minimize the impact Defendant's conditions will have on his life, compassionate release is inappropriate at this time." (Dkt. 137 at 10–11). The Court also acknowledged, however:

> There will likely come a day when this balance will tip in the other direction, and Defendant's medical condition will have deteriorated to such a point that even with the help BOP can provide, the cruelty of keeping him imprisoned will outweigh the other purposes of sentencing." (Dkt. 137 at 11).

That day has now come. In November, Defendant sustained a fall and was diagnosed with COVID-19 shortly thereafter. (Dkt. 139 at 2). In December, prison staff found him in an altered state; he was taken to the hospital, diagnosed with pneumonia, and intubated for "acute illness including acute COVID-19 respiratory failure." (Dkt. 139 at 2–3). He has since been discharged from the hospital but is currently confined to a wheelchair and unable to perform daily tasks such as eating and dressing independently. (Dkt. 140 at 1; Dkt. 142 at 5). According to Defendant's expert witness Paul Gross, MD, Defendant's "Parkinson's disease has progressed," "his recent loss of ability to perform life functions are likely permanent," and "his condition will continue to deteriorate." (Dkt. 144-1 at 1). Because of Defendant's deteriorating medical condition, and because the Government finds he demonstrates extraordinary and compelling reasons due to terminal illness, U.S.S.G. § 1B1.13,

5

Application Note 1(A)(i), the Government no longer opposes compassionate release. (Dkt. 142 at 8).

Under these circumstances, and on holistic consideration of the § 3553(a) factors, the Court finds in its discretion that compassionate release is warranted. To ensure the purposes of sentencing are accomplished, all previously imposed terms of supervised release, including restitution, will remain in effect, and Defendant will be additionally required to serve his three years of supervised release in home confinement.

Defendant's plan to reside with his sister upon release was approved as suitable by Probation. (Dkt. 126). On January 5, 2021, the Government was further informed that Defendant's sister has assured USMCFP staff that she is prepared to meet his medical needs, and USMCFP offered to provide her with a list of required medical equipment. (Dkt. 142 at 7). As Defendant is a veteran, most of his required medical equipment can be obtained through Veterans' Affairs (VA). (Dkt. 142 at 7).

For the foregoing reasons, the Court grants Defendant's request for compassionate release and will reduce his custodial sentence to time served. This Order will be stayed for fourteen (14) days for the purposes of making travel arrangements, including arranging necessary medical equipment for the trip, and ensuring Defendant's safe release, as detailed below.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's Renewed Emergency Motion for Compassionate Release (Case No. 99-10045, Dkt. 139; Case No. 12-10054, dkt. 65) is GRANTED; Defendant's custodial sentence is REDUCED to time served.

Defendant's term of supervised release shall commence immediately upon his release from the custody of the Bureau of Prisons, and the conditions of supervised release are hereby MODIFIED as follows:

> The following shall be added as a special condition of supervised release: "You shall serve your three (3) year term of supervision in home confinement. The home confinement will start as soon as possible after your supervision term begins. You shall be monitored by radio frequency monitoring technology and shall abide by all technology requirements. You shall pay the costs of the program to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the Court's review upon request.
>
> You shall sign the rules of home confinement/location monitoring and comply with the conditions of home confinement. During this time, you will remain at your place of residence except for activities approved in advance by the U.S. Probation Office. You shall wear a location monitoring device. You shall pay the costs of the program to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the Court's review upon request."

There being an appropriate release plan in place, the portion of this Order reducing Defendant's sentence is STAYED for fourteen (14) days to make appropriate travel arrangements and to ensure Defendant's safe release, as detailed below. There shall be no delay in ensuring travel arrangements are made. If more than fourteen (14) days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

Notwithstanding the stay, the Bureau of Prisons is ORDERED to immediately isolate and quarantine Defendant, to the extent consistent with his continued needs for medical care and staff assistance in daily tasks, in preparation for his release fourteen (14) days from the date of this Order. The Bureau of Prisons SHALL immediately test Defendant for COVID-19 and advise Probation of the test results. If Defendant's test is negative, the Bureau of Prisons is ORDERED to release Defendant fourteen (14) days from the date of this Order; if it is positive, the Bureau of Prisons SHALL release Defendant within 24 hours of him testing negative, and Defendant SHALL, as a condition of his supervised release, self-quarantine, to the extent consistent with his continued needs for medical care and assistance in daily tasks, for fourteen (14) additional days upon his release from custody.

The Clerk is DIRECTED to transmit a copy of this Order to U.S. Medical Center (USMCFP) Springfield by electronic means, if possible.

SO ORDERED.

Entered this 8th day of January 2021.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge

1:99-cr-10045-JBM-JAG # 145 Page 9 of 9